**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**June 19, 2013**

# In the Court of Appeals of Georgia

A13A0203. THE STATE v. HARRELL.                    DO-008 C

DOYLE, Presiding Judge.

The State appeals from the grant of a motion to suppress filed by Bryan Lamar Harrell, who was indicted for illegally using a communication facility[1] (four counts), possessing marijuana,[2] and possessing cocaine.[3] The State contends that the trial court erred by concluding that the wiretap was unlawful. Because the trial court's legal conclusions are incorrect or unsupported by the record, we reverse.

---

[1] OCGA § 16-13-32.3 (a).

[2] OCGA § 16-13-30 (j) (1).

[3] OCGA §§ 16-13-26 (1) (D); 16-13-30 (a).

"In this Court's review of a trial court's grant or denial of a motion to suppress, the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review."[4]

The record shows that Frank Green, a POST-certified investigator with the Bainbridge Public Safety Department, who was also deputized by the United States Drug Enforcement Administration, was participating in a federal drug investigation. As part of that investigation, Green prepared an application for a federal wiretap on a suspected drug dealer named Emanuel Hodge, Jr. The application was presented to United States District Court Judge Clay Land by an Assistant United States Attorney, while Green was present in District Court, and Judge Land approved the application and signed an order authorizing a 30-day wiretap pursuant to 18 USC § 2518.

As part of the investigation, federal authorities allowed Green to monitor the wiretap, and Green determined that Harrell had contacted the suspected drug dealer by phone approximately 50 times over an 11-day period to order cocaine. After one particular order, Green contacted other local investigators to coordinate a vehicle stop of Harrell after the transaction. After Green observed Harrell drive from the meeting place arranged in the monitored phone call, officers stopped Harrell's vehicle.

---

[4] *Barrett v. State*, 289 Ga. 197, 200 (1) (709 SE2d 816) (2011).

2

Officers found a misdemeanor amount of suspected marijuana in Harrell's pocket and a baggie of suspected cocaine that Harrell had thrown out of his vehicle when he noticed police following him. Harrell was then arrested and placed in the back of a police cruiser, where he received a phone call secretly monitored by the wiretap. The call was placed by the suspected drug dealer who asked Harrell if he had been stopped, and Harrell replied, "yeah, but [I] threw it out."

Based on these events, Harrell was charged with illegally using a communication facility and possession of cocaine and marijuana. He moved to suppress the evidence, challenging the legality of the wiretap, and following an evidentiary hearing, the trial court granted the motion. The State now appeals.

The State contends that the trial court erred by ruling that the wiretap authorization was unlawfully obtained. Specifically, the trial court ruled that the wiretap application was deficient because (a) it was not obtained by the prosecuting attorney before a superior court judge, (b) it did not show whether it was sealed or properly unsealed, and (c) the required notice to Harrell listed the wrong issuing judge. We agree with the State that the trial court erred by granting the motion to suppress on these grounds.

We begin our analysis by noting the context for Harrell's motion to suppress. Harrell sought to exclude the evidence obtained during the vehicle stop because he argues that the suspicion for the stop was obtained through an illegal wiretap. In other words, if the wiretap were not conducted, the police would have had no evidence of his illegal use of the communication device nor any suspicion justifying the stop of his vehicle which led to the drug possession charges.[5]

The general legal framework governing wiretap authority involves both federal and state law: "Wiretapping and surveillance are the subjects of federal and state law[,] and both must be complied with where applicable."[6] "When a state or federal agent has improperly procured a wiretap order, or there has been any failure to precisely comply with [applicable] requirements, the taped evidence is inadmissible,

---

[5] See generally *Leftwich v. State*, 299 Ga. App. 392, 394 (1) (682 SE2d 614) (2009) (evidence is fruit of the poisonous tree if it would not have been discovered but for illegal police conduct). Harrell filed two separate motions to suppress, which were consolidated in the trial court.

[6] (Punctuation omitted.) *North v. State*, 250 Ga. App. 622, 623 (1) (552 SE2d 554) (2001).

4

regardless of the good faith of the government agents."[7] Thus, no evidence obtained in a manner that violates the wiretapping statutes is admissible to show guilt.[8]

Georgia's wiretap statute provides as follows, at OCGA § 16-11-64 (c):

Upon written application, under oath, of the prosecuting attorney having jurisdiction over prosecution of the crime under investigation, or the Attorney General, made before a judge of superior court, said court may issue an investigation warrant permitting the use of such [wiretapping] device, as defined in Code Section 16-11-60, for the surveillance of such person or place *to the extent the same is consistent with and subject to the terms, conditions, and procedures provided for by Chapter 119 of Title 18 of the United States Code Annotated, as amended*.[9]

This Code section makes it clear that Georgia's substantive requirements for obtaining a wiretap incorporate the federal requirements. The Supreme Court of Georgia recently explained the historical context for this provision.

[The] provision incorporating the federal law was added to the statute as part of Georgia's Support of the War on Terrorism Act of 2002. In the 2002 amendments to the wiretap statute, the legislature deleted eight subparagraphs of procedural standards and replaced them with a single

---

[7] *Jordan v. State*, 211 Ga. App. 86, 89-90 (1) (a) (438 SE2d 371) (1993).

[8] See OCGA § 16-11-67.

[9] (Emphasis supplied.)

5

paragraph referring to the federal law. It thus appears that these amendments were intended to streamline Georgia's rules in this area and harmonize them with federal standards. Though we have long recognized that *state-authorized* wiretaps must comply with both federal and state statutory requirements, our current statute's express deference to the federal statute underscores this point.[10]

We now turn to the specific legal issues raised in this appeal.

(a) *Authority for approving wiretap application.* The trial court's order states as follows, in relevant part:

> Under Georgia law, the written [wiretap] application must be submitted, under oath, *by the prosecuting attorney having jurisdiction over the prosecution of the crime under investigation . . . and must be made before a judge of superior court.*[11] OCGA [§] 16-11-64 (c). Neither was done in the instant case.

> The wiretap warrants were not sought and obtained through the applicable State of Georgia statutory procedures, i.e.[,] the wiretap warrants were not obtained in compliance with Georgia law.

---

[10] (Citations omitted; emphasis supplied.) *Luangkhot v. State*, 292 Ga. 423, 425 (1) (736 SE2d 397) (2013).

[11] (Emphasis in original.)

Based on OCGA § 16-11-64 (c), the trial court appears to have ruled that the wiretaps were illegal because they were not sought by a Georgia prosecutor before a Georgia superior court. But this misreads the wiretap statute. OCGA § 16-11-64 (c) merely provides authority to superior court judges to issue wiretap warrants upon proper application by the prosecuting attorney. The statute contains no prohibition against evidence gathered as part of a federal investigation in compliance with the federal warrant process. In this case, the wiretap was obtained from a federal judge to whom an assistant United States attorney made a proper application. Investigator Green was working with federal officials in a multi-jurisdictional drug investigation, and the application materials, along with Green's testimony, demonstrate that the requirements outlined in the applicable federal Code section, 18 USC § 2518, were met. Thus, the fact that the warrant was not initially issued by a Georgia superior court judge did not violate the requirements for obtaining a warrant codified in OCGA § 16-11-64 (c), and this fact does not require suppression of evidence gathered pursuant to the warrant.

(b) *Sealing the Wiretap Order*. The trial court also concluded that the State "failed to show that the Order was properly sealed or that it was properly,

7

subsequently unsealed," citing 18 USC § 2518 (8) (b). That subsection provides as follows:

> Applications made and orders granted under this chapter [18 USC §§ 2510 et seq.] shall be sealed by the judge. Custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge, and in any event shall be kept for ten years.

The trial court's order does not provide further explanation nor does it assert that any improper disclosure has been made. The record clearly demonstrates that the application and order were filed under seal, and the only disclosure of record was the disclosure to the trial court for purposes of the motion to suppress. Accordingly, we discern no violation of 18 USC § 2518 (8) (b), and the trial court erred by suppressing the evidence on this ground.

(c) *Proper notice*. Last, the trial court notes that the notice provided by Green to Harrell mistakenly listed the wrong judge as the issuing judge. The trial court concluded that this was a violation of 18 USC § 2518 (8) (d), which provides as follows, in relevant part:

Within a reasonable time but not later than ninety days after the filing of an application for an order of approval under [18 USC § 2518 (7) (b)] which is denied or the termination of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application . . . an inventory which shall include notice of –

(1) the fact of the entry of the order or the application;

(2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and

(3) the fact that during the period wire, oral, or electronic communications were or were not intercepted.

Investigator Green conceded that he did mistakenly list the wrong judge in the inventory provided to Harrell, but Harrell does not dispute that he was notified of the items enumerated in 18 USC § 2518 (8) (b). It is clear from this subsection that its intent is to provide notice of the fact that the government sought a wiretap warrant, whether a warrant was issued and for what duration, and whether any communications were intercepted. A scrivener's error in the judge's name does not frustrate this purpose, and if Congress or the Georgia General Assembly had intended

to make the name of the judge a required part of this notice, they could have included them in the enumerated items. Because they did not, we decline to do so now.[12]

We note that Harrell argued below and now on appeal that the wiretap application should not have been considered by the trial judge because it allegedly contained hearsay. Nevertheless, the application documents were authenticated by Green, who prepared the documents and testified about them, and the application documents were offered not to prove the assertions therein, but to demonstrate that the requirements of the wiretap statute were met. Furthermore, "[o]fficers are entitled to rely on information provided by other officers . . . . There is no requirement that the officer or officers providing the information testify at the motion to suppress."[13] And "hearsay is admissible during a suppression hearing when determining the

---

[12] See generally *Hinton v. State*, 224 Ga. App. 49, 50 (2) (479 SE2d 424) (1996) (explaining a rule of statutory construction, expressum facit cessare tacitum, "which means that if some things (of many) are expressly mentioned, the inference is stronger that those omitted are intended to be excluded than if none at all had been mentioned") (punctuation omitted).

[13] (Citations omitted.) *Edmond v. State*, 297 Ga. App. 238, 239 (676 SE2d 877) (2009).

existence of probable cause."[14] Accordingly, the trial court did not err by considering the application package over Harrell's hearsay objection.

In light of the trial court's incorrect application of the wiretap statutes, it erred by concluding that the wiretap evidence did not satisfy Georgia law. Thus, the trial court erred by granting Harrell's motion to suppress.

*Judgment reversed. McFadden and Boggs, JJ., concur.*

---

[14] (Citation omitted.) *Daniel v. State*, 298 Ga. App. 245, 248 (3) (679 SE2d 811) (2009).